UNITED STATES DISTRICT COURT
DISTRICT COURT OF MASSACHUSETTS

CIVIL ACTION NO. 20-11080-GAO

LISA STERN TAYLOR, DANIEL ABRAHAM, & DIANA SAWYER, as PERSONAL REPRESENTATIVES OF THE ESTATE OF BRADFORD[1] SAWYER,
Plaintiffs,

v.

NEIL W. SAWYER,
Defendant.

OPINION AND ORDER
March 31, 2022

O'TOOLE, D.J.

At issue in this case is the disposition of shares of a corporation that operated a ski area in Bradford, Massachusetts, known as Ski Bradford, following the death of one of the two majority shareholders. The plaintiffs, representatives of the estate of the deceased shareholder, seek summary judgment to enforce a contract requiring the surviving shareholder to purchase the deceased shareholder's stock in the corporation.

I.  **Facts**

According to the summary judgment record, the following facts are undisputed:

Bradley C. Sawyer ("Brad") and his brother Neil W. Sawyer ("Neil") were the majority shareholders of Sawyer Enterprises, Inc., a New Hampshire Corporation that owned and operated a ski area in Bradford, Massachusetts known as Ski Bradford.

---

[1] The Complaint identifies the plaintiffs as personal representatives of the estate of "Bradford Sawyer," but the parties' submissions refer to "Bradley Sawyer."

On or about January 21, 2005, Brad and Neil entered into an agreement relating to their stock in Sawyer Enterprises (the "Sawyer Agreement"). The Sawyer Agreement addresses the transfer of shares in Sawyer Enterprises upon the death of either shareholder. In relevant part, it provides that:

> Upon the death of either Shareholder, the estate or personal representative of the deceased Shareholder (the "Estate") shall sell, and the surviving Shareholder shall purchase all the Shares owned by such deceased Shareholder in the manner hereinafter provide. The closing of the purchase and sale shall take place within a reasonable time, not to exceed ninety (90) days, after the appointment of a personal representative following the death of a Shareholder (the "Closing").

(Pls.' Statement of Material Facts, Ex. B at § 1 (dkt. no. 25).)

The Sawyer Agreement details a formula for determining the purchase price. Specifically, the purchase price is calculated by:

> [D]ividing the average of the corporation's annual gross revenue, as shown on its financial statements, for its three most recent full fiscal years prior to the date of death of the deceased shareholder by the total number of shares of the corporation issued and outstanding as of the date of the deceased Shareholder multiplying the resulting quotient by the number of shares owned by the deceased Shareholder and Immediate Family Members.

(Pls.' Statement of Material Facts, Ex. B at § 1.) Section 2 of the Sawyer Agreement sets forth the terms of the Promissory Note and of the Stock Pledge Agreement. It provides that the Promissory Note and Stock Pledge agreement are to be executed by the surviving shareholder to complete the purchase of the decedent shareholder's shares. The Sawyer Agreement was not amended after execution.

On December 6, 2012, trustees of various trusts and other persons in their individual capacities entered into an agreement (the "RT Agreement") involving the Brad-Neil Realty Trust (the "Trust"), the titleholder to the land on which Ski Bradford is located. It provides for the transfer of interests in the Trust upon the death of any of the individuals involved in the agreement at the fair market value of the property owned by the Trust.

Brad died on September 5, 2016. He owned 50% of the outstanding shares of Sawyer Enterprises at the time of his death. Lisa Stern Taylor, Daniel Abraham, and Diana Sawyer were collectively appointed the Personal Representative of his estate. At their request, Edward Manzi, the accountant for Sawyer Enterprises, calculated the three-year average of the corporation's gross receipts for the periods ending November 30, 2015, November 30, 2014, and November 30, 2013. According to the prescribed calculation, the average annual gross revenue for the three fiscal years preceding Brad's death was $2,445,534. As established by the purchase price calculation formula in the Sawyer Agreement, the purchase price for the outstanding shares is $1,222,767.[2]

On February 24, 2017, the plaintiffs' counsel forwarded to Neil's attorney the Promissory Note and the Stock Pledge Agreement. The plaintiffs have been ready to close on the sale of their stock as called for in the Sawyer Agreement since February 24, 2017, but the defendant has not yet executed the Promissory Note and Stock Pledge Agreement.

**II.    Discussion**

In order for a plaintiff to prevail on a breach of contract claim under Massachusetts law, the plaintiff must show that "(1) a valid contract between the parties existed, (2) the plaintiff was ready, willing, and able to perform, (3) the defendant was in breach of the contract, and (4) the plaintiff sustained damages as a result." Bose Corp. v. Ejaz, 732 F.3d 17, 21 (1st Cir. 2013) (citing Singarella v. Boston, 173 N.E.2d 290, 291 (Mass. 1961)). The basic elements of a breach of contract claim are not in dispute. Rather, what is at issue is whether the defendant is relieved of his obligation under the Sawyer Agreement to close on the purchase of the stock.

---

[2] In support, the plaintiffs rely upon the undisputed calculations by Manzi. The defendant purports to dispute the purchase price, but he does not provide any evidence of an actual dispute, nor does he provide an alternative figure. Therefore, there is no genuine dispute of fact as to the purchase price.

The defendant makes several arguments to excuse his failure to perform under the contract. First, he argues broadly that the Sawyer Agreement must be interpreted in concert with the RT Agreement, but he does so without justifying support. First, he points to this Court's administrative consolidation of the two separate cases, one involving the Sawyer Agreement (Civ. Action No. 20-11080) and the other the RT Agreement (Civ. Action No. 20-cv-11081), and he argues that the documents in the separate cases must be interpreted together. The two cases—each of which involves an aspect of the disposition of the Ski Bradford business and real estate—were consolidated for judicial economy under Local Rule 40.1(j) to permit the same judge to preside over both matters. (See, e.g., Assented To Mot. To Consolidate at 2 (dkt. no. 15) ("While the Buy-Sell Agreements are separate and distinct contracts the parties and counsel are the same and judicial economy suggests that the matters be consolidated.").) The case management tool has no substantive effect, and it certainly did not alter in any way the substance of the parties' legal or factual disputes.

The defendant further argues that he and his brother never intended for the contracts to be read separately. However, the words of an unambiguous contract should be interpreted in accordance with their ordinary and usual sense, and the Sawyer Agreement does not suffer from any ambiguity that would justify disregarding the plain terms agreed to by the parties at the time of its execution.

The defendant also contends, incorrectly, that interpreting the two agreements independently would result in the same assets being valued multiple times. The agreements, entered into years apart from each other, involve two separate legal entities with their own objectives, valuations, and owners. The corporation Sawyer Enterprises operated the ski area on property owned by the Trust. That is hardly a unique, or even rare, business arrangement, whether

between related or unrelated parties. Without more, there is no legal reason to require the separate documents, subjects of different factual disputes, to be interpreted together. The agreements do not "double count" the same asset.[3]

Second, the defendant argues that the RT Agreement is void because of mutual mistake. In his answer, the defendant raised twelve different affirmative defenses. Mutual mistake was not one of them, nor has the defendant amended his answer to include it. The defendant has cited no facts in support of such a defense, and no new circumstances arising after the filing of the answer to support his entitlement to that defense.

Further, even if the defense had been timely raised, the defendant has not offered factual assertions that would permit a reasonable jury to find in his favor on the issue of mutual mistake. The purported mistake he suggests relates to the RT Agreement, which was executed years after the Sawyer Agreement. The defendant does not contend that any provision of the Sawyer Agreement itself was the result of a mutual mistake when it was made. Consequently, the defendant's assertion of a mutual mistake defense to the Sawyer Agreement will not prevent summary judgment in favor of the plaintiffs.

Third, the defendant argues that the RT Agreement is unenforceable on the basis of frustration of purpose. But that argument pertains to the RT Agreement, which is not the subject of the plaintiffs' motion in this case. This argument also appears to have been only recently raised for the first time. Even if the defense were permitted to be argued, the defendant has not demonstrated the availability of the defense on this record. Under Massachusetts law, frustration

---

[3] There is no actual dispute in this respect. Although the defendant vaguely asserts that the "values of these components were, to a large extent, interdependent (i.e., the valuation of the ski business without any land upon which to operate it would be different than if it was valued along with the land, etc.)," the defendant offers no factual evidence that in fact the valuations would be different.

of purpose can occur, after a contract is made, if "a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made," in which case "his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary." Chase Precast Corp. v. John J. Paonessa Co., 566 N.E.2d 603, 606 (Mass. 1991) (quoting Restatement (Second) of Contracts § 265 (1981)). The defendant, however, does not identify any occurrence of an event the nonoccurrence of which was a basic assumption on which the contract was made. The death of one of the shareholders, rather than being a frustrating event, was precisely the occurrence the Sawyer Agreement was made to address. To the extent that the defendant is arguing that the purchase price was set too high to expect him to be able to pay it in one sum, the contract provides for an opportunity to perform by paying installments over time. No reasonable jury could find in favor of the defendant for frustration of purpose.

Based on this summary judgment record, there are no material facts in actual dispute as to the elements of the plaintiffs' breach of contract claim. Because the defendant has not raised a triable issue as to a defense to his breach of the Sawyer Agreement, the plaintiffs are entitled to judgment as a matter of law.

### III. Conclusion

For the foregoing reasons, the plaintiffs' Motion for Summary Judgment (dkt. no. 23) is GRANTED. Judgment shall enter in favor of the plaintiffs.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge